UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
CESAR VARGAS and GLORIA VARGAS,

         Plaintiffs,   : Case No. 22 Civ. 7331
  - against -

GABRIELE LANGER a/k/a BARONESS G. von : **COMPLAINT**
LANGENDORFF,

         Defendant.

-----------------------------------------------------------------------X

  Plaintiffs Cesar Vargas and Gloria Vargas, by and through their attorneys Kessler Matura P.C., complaining of Defendant Gabriele Langer a/k/a Baroness G. von Langendorff, allege as follows:

## INTRODUCTION

  1. Plaintiffs Cesar Vargas and Gloria Vargas worked as domestic workers for Defendant at her property located at 32 Watch Way, Huntington, New York 11743. Cesar maintained Defendant's 33-acre property and two residential structures, whereas Gloria cooked, cleaned, did laundry, and otherwise maintained the inside of the 6,300-sqaure-foot home.

  2. Defendant paid Plaintiffs on a monthly basis.

  3. As a result, Defendant violated the requirement that manual workers be paid on a weekly basis in accordance with the New York Labor Law ("NYLL"), Article 6, §§ 190, *et seq.*

  4. The State of New York has required certain businesses to pay their manual workers on a weekly basis since the 19th Century. *See* N.Y. Session Law 1890, Ch. 388 § 1 ("Every manufacturing . . . company shall pay weekly, each and every employee engaged in its business, the wages earned by such employee to within six days of the date of such payment . . . ."); N.Y.

Session Law 1897, Ch. 415 §§ 2, 10 ("Every corporation . . shall pay weekly to each employe [sic] the wages earned by him to a day not more than six days prior to the date of such payment.").

5. A reasonable employer inquiring into the wage payment rules of New York would know that manual workers are to be paid each week given that, for example, the rules are listed on the Department of Labor's Frequency Asked Quests flyer regarding the Wage Theft Prevention Act (https://dol.ny.gov/system/files/documents/2021/03/wage-theft-prevention-act-frequently-asked-questions_0.pdf) and many legal, human resource, and employment blogs brought attention to this issue following the First Department's 2019 decision in *Vega v. CM & Assocs. Constr. Mgmt. LLC*, 175 A.D.3d 1144 (1st Dept. 2019).

6. Further, Defendant violated the requirement that employees "be paid on the regular pay day" under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. *See* 29 C.F.R. § 778.106.

7. Plaintiffs bring the First and Second Causes of Action under FLSA § 216(b) and NYLL § 198, respectively, for liquidated damages and interest, arising from Defendant's violation of the FLSA and NYLL § 191.

8. Defendant also failed to pay Plaintiffs overtime wages, pay Plaintiffs at or above the minimum wage, and provide wage statements in violation of the NYLL.

## JURISDICTION & VENUE

9. Jurisdiction of the Court over this controversy is based upon 28 U.S.C. §§ 1331 and 29 U.S.C. § 216(b).

10. This action properly lies in the Eastern District of New York, pursuant to 28 U.S.C. § 1391(b)(2), because events giving rise to this action occurred in Suffolk County, New York.

11. This Court has jurisdiction over all state law claims brought in this action pursuant to 28 U.S.C. § 1367(a).

## THE PARTIES AND APPLICABLE FACTS

### *Plaintiff Cesar Vargas*

12. Cesar Vargas is a resident of Suffolk County, State of New York.

13. Cesar worked for Defendant from about November 1999 through October 2021.

14. At all times relevant, Cesar was an "employee" as defined by 29 U.S.C. § 203(e)(1).

15. At all times relevant, Cesar was an "employee" as defined by NYLL §§ 190(2), 651(5).

16. At all times relevant, Cesar was a "domestic worker" as defined by NYLL § 2(16).

### *Defendant Violated Plaintiff's Rights under NYLL § 191*

17. Cesar was employed as a caretaker of Defendant's home.

18. In this capacity, Cesar did maintenance work on the house and on the grounds, he mowed the lawn, raked and picked up leaves, shoveled and moved snow, cleaned the indoor pool, made minor repairs (e.g., painting, patching the asphalt driveway, patching the roof, repairing leaks, repairing the wooden bulkhead), trimmed the hedges, picked up branches, raked the gravel, and performed security checks.

19. Most of Cesar's time as a was spent performing this physical labor.

20. Cesar's primary duties were non-clerical, non-managerial, and not related to sales.

3

21. At all times relevant, Cesar was an "employee" as defined by 29 U.S.C. § 203(e)(1).

22. At all times relevant, Cesar was an "employee" as defined by NYLL §§ 190(2), 651(5).

23. At all times relevant, Cesar was a "domestic worker" as defined by NYLL § 2(16).

24. As a result, Cesar was a "manual worker" as per NYLL § 190(4).

25. Cesar was entitled to payment of his wages withing seven calendar days after the end of the workweek, as per NYLL §191(1)(a).

26. Throughout his employment, however, Defendant paid Cesar monthly.

27. As a result, his wages in the first, second, and third workweeks of the monthly payment cycle were late every time he was paid, in violation of the NYLL and FLSA.

28. Further, the fourth week was often late as well.

29. For example, Cesar was paid for the work he performed during the month of June via check made out by Defendant and dated July 10, 2021.

*Defendant Failed to Pay Plaintiff Overtime and Minimum Wages*

30. Defendant paid Cesar the same monthly salary every month, amounting to $2,200, regardless of the number of days or hours worked throughout the month.

31. Throughout his employment, Cesar regularly worked over 44 hours in a workweek.

32. Generally, on any given week, Cesar spent 30 to 35 hours, performing his usual maintenance duties:

- Mondays: 7:00 am – 5:00 pm
- Tuesdays: 1:00 pm – 5:00 pm

4

- Wednesdays: 7:00 am – 4:00 pm
- Thursdays: On Call
- Fridays: 1:00 pm – 5:00 pm
- Saturdays: 7:00 am – 12:00 am
- Sundays: On Call

33. Additionally, Cesar was required to be on call at all other times.

34. That is, Cesar had to take and respond to Defendant's instructions by phone, intercom, or in person, at any time of day.

35. Further, Cesar had to host Defendant's guests, associates, and others.

36. For example, when Defendant was selling the home, Cesar regularly had to escort the real estate agent and potential buyers around the house and the grounds whenever they came to the house.

37. Cesar was also required to accept deliveries and supervise contractors.

38. In the evenings, particularly on the weekends, Cesar had to respond to Defendant's requests when she or her houseguests were there. That is, he had to tend to the fireplace, assist guests with luggage, open the large windows, prepare the beds, adjust the thermostat, and check in on the guests to make sure they were comfortable. To this end, Cesar's work was akin to that of a butler.

39. Furthermore, Cesar had additional duties based on the season.

40. For example, when it snowed, Cesar would spend about four to five hours shoveling around the house and using the snow mover to clear the long driveway each time he went outside. During heavy snow falls, he would have to do this two, three, or four times over the course of a snowy day.

41. In the fall, Cesar cleared leaves from the six-acre lawn. As a result, he would start working between 7:00 am and 8:00 am on Tuesdays and Fridays as well.

5

42. After storms, Cesar would start earlier and work later to clear branches and clean up the property.

43. As a result, Defendant failed to pay Cesar at or above the applicable minimum wage.

44. Further, Defendant failed to pay Cesar overtime pay equal to one and one-half times his regular rate for all hours over 44.

### *Defendant Did Not Provide Plaintiff with a Wage Statement*

45. Defendant never provided Cesar with a paystub when issuing him his wages.

46. Defendant never provided Cesar with a document listing his hours worked, wages paid, basis of wage payments, or any allowances taken against the minimum wage.

### *Plaintiff Gloria Vargas*

47. Gloria Vargas is a resident of Suffolk County, State of New York.

48. Gloria worked for Defendant from about November 1999 through October 2021.

49. Gloria was employed as a domestic worker at Defendant's home.

50. She was responsible for keeping Defendant's 6,300-square-foot home clean.

51. To that end, Gloria did laundry, ironed clothes and bedsheets, made the beds, and swept, mopped, vacuumed, dusted, and scrubbed every room in the house.

52. Gloria was also responsible for cooking for Defendant.

53. To that end, she shopped for groceries at the store, cooked, and served food and beverages to Defendant and her guests.

54. Most of Gloria's time as a was spent performing physical labor.

55. At all times relevant, Gloria was an "employee" as defined by 29 U.S.C. § 203(e)(1).

56. At all times relevant, Gloria was an "employee" as defined by NYLL §§ 190(2), 651(5).

57. At all times relevant, Gloria was a "domestic worker" as defined by NYLL § 2(16).

58. Gloria's primary duties were non-clerical, non-managerial, and not related to sales.

59. As a result, Gloria was a "manual worker" as per NYLL § 190(4).

60. Gloria was entitled to payment of her wages withing seven calendar days after the end of the workweek, as per NYLL §191(1)(a).

61. Throughout his employment, however, Defendant paid Gloria monthly.

62. As a result, his wages in the first, second, and third workweeks of the monthly payment cycle were late every time he was paid, in violation of the NYLL and FLSA.

63. Further, the fourth week was often late as well.

64. For example, Gloria was paid for the work she performed during the month of June 2021 via check made out by Defendant and dated July 10, 2021.

*Defendant Failed to Pay Plaintiff Overtime and Minimum Wages*

65. Defendant paid Gloria the same monthly salary every month, amounting to $1,350, regardless of the number of days or hours worked throughout the month.

66. Throughout her employment, Gloria regularly worked over 44 hours in a workweek.

67. Generally, during the week, Gloria would work from 9:00 am through 6:00 pm, cleaning the home, doing the laundry, and making the beds.

68. Gloria's focus was to clean and organize the home Monday through Thursday.

69. On Friday and through Saturday afternoon, Gloria would prepare the kitchen for Defendant and her guests. That is, she would go shopping and cook.

70. When Defendant was in the home, mostly on Saturdays and Sundays, Gloria cooked for Defendant and her guests and cleaned up after them.

71. On Saturdays, after dinner, Gloria would often work until after midnights preparing fruit, snacks, and beverages for Defendant and her guests. She would then have to clean the kitchen.

72. As a result, Defendant failed to pay Gloria at or above the applicable minimum wage.

73. Further, Defendant failed to pay Gloria overtime pay equal to one and one-half times her regular rate for all hours over 44.

### *Defendant Did Not Provide Plaintiff with a Wage Statement*

74. Defendant never provided Gloria with a paystub when issuing him his wages.

75. Defendant never provided Gloria with a document listing his hours worked, wages paid, basis of wage payments, or any allowances taken against the minimum wage.

### *Defendant Gabriele Langer a/k/a Baroness G. von Langendorff*

76. Defendant is an individual residing in New York County, New York.

77. Defendant is an "employer" within the meaning of 29 U.S.C. § 203(d).

78. Defendant is an "employer" within the meaning of NYLL §§ 2(6), 190(3), 651(6).

79. Defendant maintained control, oversight, and direction over her operations and employment practices.

80. At all times hereinafter mentioned, Defendant employed employees, including Plaintiffs, who regularly engaged in the handling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of Section 3(b), (g), (i) and (j) of the FLSA, 29 U.S.C. § 203(b), (g), (i), (j), (r) & (s).

81. Defendant failed to post the requisite wage-and-hour notices under the FLSA and the NYLL.

82. An employer in Defendant's position should have been aware of its obligations under the FLSA and NYLL, including to pay overtime, the minimum wage, timely wages, and to provide wage statements.

83. For example, New York's Domestic Workers' Bill of Rights, which took effect on November 29, 2010, was reported on in the news at the time.

84. Throughout the relevant period, the Wage and Hour Division of the United States Department of Labor has made information on an employer's obligations under the FLSA, as it relates to domestic workers, publicly available through a simple internet search.

85. The New York State Department of Labor, likewise, has published numerous "fact sheets" and "FAQs" on the Domestic Workers' Bill of Rights since 2010.

## **FIRST CAUSE OF ACTION**
**FLSA – Failure to Pay Timely Wages**
**(On behalf of Plaintiffs)**

86. Plaintiffs incorporates by reference all preceding allegations.

87. Plaintiffs were employees entitled to on-time payment of their statutory minimum wages after the workweek ends. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945).

88. Defendant, however, withheld Plaintiffs' federally mandated wages for eight or more days after the conclusion of the workweek.

89. Plaintiffs were denied wages amount to at least the minimum wage times their hours worked for the duration of the illegal delay.

90. This delay was pursuant to a practice to pay Plaintiffs on a monthly basis.

91. Such a delay is inherently unreasonable, as Defendant was required by New York law to pay Plaintiffs within seven days after the end of the workweek.

92. Defendant failed to make a good faith effort to comply with the FLSA with respect to compensating Plaintiffs.

93. Defendant was able to pay all minimum wages and overtime wages due on a weekly basis.

94. Defendant was able to and did pay Plaintiffs all minimum wages and overtime wages due within the statutorily required period as it relates to the last workweek of each pay period, but refused to do so for the other workweeks.

95. Defendant had the means to pay Plaintiffs within one week of the end of the workweek but chose not to.

96. Because Defendant's violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

97. Plaintiffs were uniformly deprived of the time value of their earned wages during periods in which payment was illegally delayed.

98. Defendant, however, benefited from the delayed payments. That is, among other things, Defendant saved on time and expense by paying less frequently than required. Defendant also retained the benefit of the extra money she was holding onto until payroll was cut.

99. As a consequence of the willful delayed payment of wages, alleged above, Plaintiffs incurred damages and seek to recover interest, liquidated damages, attorneys' fees, and costs in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**
**NYLL – Untimely Payment of Wages**
**(On behalf of Plaintiffs)**

100. Plaintiffs incorporate by reference all preceding allegations.

101. Defendant failed to pay Plaintiffs on a weekly basis as required by NYLL § 191(1)(a).

102. Defendant has not employed over 1,000 individuals in the State of New York for one or more consecutives years.

103. Defendant has not received authorization under NYLL § 191(1)(a)(ii) from the Commissioner of Labor to pay her employees less frequently than once per week.

104. Defendant does not possess a good faith basis for believing that her delayed payment of wages complied with the law.

105. Due to Defendant's violations of NYLL § 191(1)(a), Plaintiffs are owed liquidated damages amounting to the value of any late-paid wages during the six years prior to the filing of this complaint, interest, and reasonable attorneys' fees and costs as provided for by NYLL § 198.

**THIRD CAUSE OF ACTION**
**NYLL – Failure to Pay Overtime Wages**
**(On behalf of Plaintiffs)**

106. Plaintiffs incorporate by reference all preceding allegations.

107. Defendant failed to pay Plaintiffs at a rate of less than one and one-half time their regular rate for all hours worked over 44 in a workweek.

108. By the course of conduct set forth above, Defendant violated NYLL § 170.

109. Defendant's failure to pay all overtime compensation due to Plaintiffs was willful or otherwise lacked sufficient good faith within the meaning of NYLL § 663.

110. As a consequence of the willful underpayment of wages, alleged above, Plaintiffs incurred damages thereby and Defendant is indebted to them in the amount of the unpaid wages and such other legal and equitable relief due to Defendant's unlawful and willful conduct, as the Court deems just and proper.

111. Plaintiffs further seek the recovery of their unpaid wages, liquidated damages, attorneys' fees, and costs as provided by the NYLL.

**FOURTH CAUSE OF ACTION**
**NYLL – Failure to Pay the Minimum Wage**
**(On behalf of Plaintiffs)**

112. Plaintiffs incorporate by reference all preceding allegations.

113. Plaintiffs were entitled to hourly wages of not less than the following:

(a) $10.00 per hour on and after December 31, 2016;

(b) $11.00 per hour on and after December 31, 2017;

(c) $12.00 per hour on and after December 31, 2018;

(d) $13.00 per hour on and after December 31, 2019; and

(e) $14.00 per hour on and after December 31, 2020.

114. Throughout their employment with Defendant, Plaintiffs were paid less than the applicable minimum wage for all hours worked.

115. By the course of conduct set forth above, Defendant violated NYLL § 652.

116. By the course of conduct set forth above, Defendant violated 12 N.Y.C.R.R. § 142-2.1.

117. Defendant's failure to pay all the minimum wage due to Plaintiffs was willful or otherwise lacked sufficient good faith within the meaning of NYLL § 663.

118. As a consequence of the willful underpayment of wages, alleged above, Plaintiffs incurred damages thereby and Defendant is indebted to them in the amount of the unpaid wages and such other legal and equitable relief due to Defendant's unlawful and willful conduct, as the Court deems just and proper.

119. Plaintiffs further seek the recovery of their unpaid wages, liquidated damages, attorneys' fees, and costs as provided by the NYLL.

## FIFTH CAUSE OF ACTION
### NYLL – Failure to Provide Wage Statements
### (On behalf of Plaintiffs)

120. Plaintiffs incorporate by reference all preceding allegations.

121. Defendant failed to provide a wage statement with every wage payment to Plaintiffs listing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage.

122. By the course of conduct set forth above, Defendant violated NYLL § 195(3).

123. Defendant failed to record the wages paid, including any allowances taken against the minimum wage, to and hours worked by Plaintiffs as required by 12 N.Y.C.R.R. § 142-2.6.

124. Defendant did not make complete payment of all wages due under Article 6 of the NYLL.

125. Defendant did not make timely payment of all wages due under Article 6 of the NYLL.

126. Defendant did not reasonably believe that she was not required to provide Plaintiffs with wage statements under NYLL § 195(3).

127. Defendant's failure to provide Plaintiffs with wage statements under NYLL § 195(3) was not based on a reasonable good-faith belief that she was not required to comply with Section 195(3) of the NYLL.

128. Defendant's failure to provide Plaintiffs with wage statements obfuscated her untimely-wage-payment and overtime violations.

129. Defendant's failure to report Plaintiffs' actual hours worked and basis of pay facilitated her unlawful overtime policy.

130. That is, Defendant failed to provide Plaintiffs with the information necessary to determine whether their weekly hours ever exceeded 44 in a single workweek, entitling them to overtime, or whether their wages exceeded the minimum wage.

131. This hindered Plaintiffs ability to challenge Defendant's the unlawful payment of wages at the time of the payment.

132. Plaintiffs seek recovery of damages amounting to $250 per workday for each violation of NYLL § 195(3), but not to exceed $5,000 each.

133. Plaintiffs further seek the recovery of attorneys' fees and costs as provided by the NYLL.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully requests the following relief:

A. Unpaid overtime wages under the NYLL;

B. Unpaid minimum wages under the NYLL;

C. Statutory damages for the failure to provide a wage statement under the NYLL;

D. Liquidated damages under the FLSA and NYLL;

E. Attorney's fees and costs of the action;

    F.    Pre-judgment interest and post-judgment interest as provided by law;

    G.    A declaratory judgment that the practices complained of are unlawful; and

    H.    Such other injunctive and equitable relief as this Court shall deem just and proper.

Dated: Melville, New York
       December 2, 2022

Respectfully submitted,

By: /s/ Garrett Kaske
    Garrett Kaske

**KESSLER MATURA P.C.**
Troy L. Kessler
Garrett Kaske
534 Broadhollow Road, Suite 275
Melville, NY 11747
Phone: (631) 499-9100
Fax: (631) 499-9120
tkessler@kesslermatura.com
gkaske@kesslermatura.com

*Attorneys for Plaintiffs*

# Exhibit A

**CONSENT TO BECOME A PARTY-PLAINTIFF**

1. I consent to be a party plaintiff in a lawsuit against my former employer, Gabriele Langer a/k/a Baroness G. von Langendorff ("Defendant") and/or any related entities, for alleged violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, and any applicable state law.

2. During the past three years, there were occasions when Defendant did not pay me as required by the Fair Labor Standards Act.

3. I designate Kessler Matura P.C. to represent me and make decisions on my behalf concerning the litigation, including any settlement. I agree to be bound by any adjudication, whether it is favorable or unfavorable.

4. I also consent to join any separate or subsequent action to assert my claims against Defendant and/or any related entities potentially liable.

Date: 11/30/2022

Signature: *Cesar Vargas* (DocuSigned, 2B82520416514E0...)

Print Name: Cesar Vargas

**CONSENTIMIENTO PARA CONVERTIRSE EN PARTE DEMANDANTE**

1. Consiento a ser un demandante partidario en una demanda en contra de mi antiguo empleador, Gabriele Langer a/k/a Baroness G. von Langendorff ("Demandada") y/o cualquier entidad relacionada, por presuntas violaciones del Acto de Estándares de Trabajo Justo, 29 Congreso de los Estados Unidos §201, *et seq.*, y cualquier ley estatal aplicable.

2. Durante los últimos tres años, hubo ocasiones donde la Demandada no me pago lo requerido bajo el Acto de Estandares de Trabajo.

3. Designo a Kessler Matura P.C., para que me representen y tomen decisiones en mi nombre con respecto al litigio, incluyendo cualquier acuerdo. Acepto estar obligado por cualquier adjudicación, ya sea favorable o desfavorable.

4. Consiento también a unirme a cualquier acción separada o subsecuente para afirmar mis reclamos contra la Demandada y/o cualquier entidad relacionada potencialmente responsable.

Fecha: 11/30/2022

Firma: *Cesar Vargas* (DocuSigned, 2B82520416514E0)

Nombre en Letra: Cesar Vargas

## CONSENT TO BECOME A PARTY-PLAINTIFF

1. I consent to be a party plaintiff in a lawsuit against my former employer, Gabriele Langer a/k/a Baroness G. von Langendorff ("Defendant") and/or any related entities, for alleged violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, and any applicable state law.

2. During the past three years, there were occasions when Defendant did not pay me as required by the Fair Labor Standards Act.

3. I designate Kessler Matura P.C. to represent me and make decisions on my behalf concerning the litigation, including any settlement. I agree to be bound by any adjudication, whether it is favorable or unfavorable.

4. I also consent to join any separate or subsequent action to assert my claims against Defendant and/or any related entities potentially liable.

Date: 12/2/2022

Signature

Gloria Vargas

Print Name

## CONSENTIMIENTO PARA CONVERTIRSE EN PARTE DEMANDANTE

1. Consiento a ser un demandante partidario en una demanda en contra de mi antiguo empleador, Gabriele Langer a/k/a Baroness G. von Langendorff ("Demandada") y/o cualquier entidad relacionada, por presuntas violaciones del Acto de Estándares de Trabajo Justo, 29 Congreso de los Estados Unidos §201, *et seq.*, y cualquier ley estatal aplicable.

2. Durante los últimos tres años, hubo ocasiones donde la Demandada no me pago lo requerido bajo el Acto de Estandares de Trabajo.

3. Designo a Kessler Matura P.C., para que me representen y tomen decisiones en mi nombre con respecto al litigio, incluyendo cualquier acuerdo. Acepto estar obligado por cualquier adjudicación, ya sea favorable o desfavorable.

4. Consiento también a unirme a cualquier acción separada o subsecuente para afirmar mis reclamos contra la Demandada y/o cualquier entidad relacionada potencialmente responsable.

Fecha: 12/2/2022

Firma

Gloria Vargas

Nombre en Letra