UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X

CESAR VARGAS and GLORIA VARGAS,                    :

                                        Plaintiffs,    :   Case No. 22 Civ. 7331 (GRB)(JMW)

                - against -                             :
                                                        :
GABRIELE LANGER a/k/a BARONESS G. von    :
LANGENDORFF,                                          :
                                                        :
                                        Defendant.     :

-------------------------------------------------------------------------X

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
## <u>PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT</u>

KESSLER MATURA P.C.
Troy L. Kessler
Garrett Kaske
534 Broadhollow Rd., Ste 275
Melville, NY 11747
Phone: (631) 499-9100
Fax: (631) 499-9120
tkessler@kesslermatura.com
gkaske@kesslermatura.com

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

Introduction...........................................................................................................................1

Facts ....................................................................................................................................1

I.    Plaintiffs were Employed by the Baroness as Domestic Workers...........................1

      A.  Cesar worked as a caretaker of Defendant's estate.........................................2

      B.  Gloria was responsible for cooking and cleaning Defendant's home...............3

      C.  VIP Centrally Controls its Dealerships............................................................4

II.   Plaintiffs Worked Long Hours.................................................................................3

      A.  Cesar ..............................................................................................................3

      B.  Gloria .............................................................................................................4

III.  Defendant's Payroll Practices ................................................................................5

ARGUMENT .......................................................................................................................5

I.    Defendant Failed to Answer the Complaint, Despite Being Served and Given the Opportunity
      to Cure.....................................................................................................................5

II.   The Court Should Grant Default Judgment on All Five Causes of Action .............6

      A.  All of the preliminary FLSA and NYLL elements were pleaded in the Complaint ...........6

          1.   Plaintiffs satisfied the FLSA's jurisdictional prerequisite .....................6

          2.   Plaintiffs were Defendant's employees .................................................7

      B.  First and Second Causes of Action:  Defendant paid Plaintiffs late in violation of the FLSA
          and NYLL .......................................................................................................8

          1.   Defendant's monthly wage payments violated Section 191 of the NYLL .............9

          2.   Defendant's failure to pay Plaintiffs on time, whether pursuant to the NYLL's
               mandate or Defendant's own payment schedule, violated the FLSA ....................9

      C.  Third Cause of Action:  Defendant did not pay overtime wages to Plaintiffs..................11

      D.  Fourth Cause of Action:  Defendant failed to pay at or above the minimum wage ..........12

      E.  Fifth Cause of Action:  Defendant failed to provide wage statements ..............................12

III. Plaintiffs are Owed $541,462.73 in Damages and Interest as of this Motion ........................15

    A.  The statute of limitations under the extends back to April 2016 .......................16

    B.  Plaintiffs are owed $127,559.94 in back wages...................................................16

    C.  Plaintiffs are owed $366,062.57 in liquidated damages ....................................17

    D.  Plaintiffs are entitled to $5,000 each in wage-statement damages ...................18

    E.  The prejudgment interest is accruing at $31.45 per day ....................................18

    F.  Court should order Defendant to pay post-judgment interest and an automatic 15% increase in the value of the judgment, before post-judgment interest, pursuant to Sections 198(4) and 663(4) of the NYLL if the judgement goes unpaid after 90 days ..............................19

IV. Plaintiffs' Request for Costs of $506.65 is Reasonable.........................................................20

CONCLUSION.............................................................................................................................20

# TABLE OF AUTHORITIES

**PAGES**

**CASES**

*Adams v. City of New York*,
   2021 WL 1791182 (S.D.N.Y. May 5, 2021) ........................................................ 10

*Beh v. Cmty. Care Companions Inc.*,
   2021 WL 3914297 (W.D.N.Y. Feb. 1, 2021) ......................................................... 9

*Belizaire v. RAV Investigative & Sec. Servs. Ltd.*,
   61 F. Supp. 3d 336 (S.D.N.Y. 2014) ................................................................... 10

*Bell v. Saunders*,
   2022 WL 2064872 (N.D.N.Y. June 8, 2022) ........................................................ 16

*Bemejo v. Shaker Contractors, Corp.*,
   2022 WL 17251667 (S.D.N.Y. Nov. 28, 2022) ..................................................... 18

*Brito v. Marina's Bakery Corp.*,
   2022 WL 875099 (E.D.N.Y. Mar. 24, 2022) .............................................. 9, 11, 17

*Bueno v. Alla B. Buzinover, M.D.*,
   2023 WL 2387113 (S.D.N.Y. Mar. 7, 2023) ......................................................... 14

*Callejas v. Hitano Servs., Inc.*,
   2016 WL 11440079 (E.D.N.Y. Aug. 10, 2016) ..................................................... 15

*Cardenas v. Aragon Towers Condo. Ass'n Inc.*,
   451 F. App'x 898 (11th Cir. 2012) (per curiam .................................................... 7

*Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*,
   699 F.3d 230 (2d Cir. 2012) ............................................................................... 15

*Culajay v. P.M.F. Steel Corp.*,
   2018 WL 1936457 (E.D.N.Y. Feb. 21, 2018) ....................................................... 15

*Diaz v. Rene French Cleaners, Inc.*,
   2022 WL 4646866 (E.D.N.Y. Aug. 29, 2022) ........................................... 15, 19, 20

*Domi v. 2301 Kings LLC*,
   2021 WL 5013659 (E.D.N.Y. Oct. 28, 2021) ......................................................... 9

*Dominici v. Bd. of Educ. of City of Chicago*,
   881 F. Supp. 315 (N.D. Ill. 1995) ....................................................................... 10

*FEC v. Akins*,
    524 U.S. 11, (1998) ...................................................................................................... 13

*Franco v. City of Victorville*,
    2009 WL 10668439 (C.D. Cal. Sept. 23, 2009) ........................................................ 10

*Fustok v. ContiCommodity Servs., Inc.*,
    873 F.2d 38 (2d Cir. 1989) ........................................................................................ 15

*Gorski v. State*,
    23 Misc. 3d 327, 874 N.Y.S.2d 347 (Ct. Cl. 2008) .................................................. 11

*Grae v. Corr. Corp. of Am.*,
    57 F.4th 567 (6th Cir. 2023) ...................................................................................... 13

*Guzman v. Carlo's Bakery 42nd & 8th LLC*,
    2022 WL 1909581 (Sup. Ct. June 01, 2022) .............................................................. 17

*Hart v. Rick's Cabaret Int'l, Inc.*,
    967 F. Supp. 2d 901 (S.D.N.Y. 2013) .......................................................................... 7

*Harty v. W. Point Realty, Inc.*,
    28 F.4th 435 (2d Cir. 2022) ....................................................................................... 13

*Iqbal v. Multani*,
    2013 WL 5329286 (E.D.N.Y. Sept. 20, 2013) ............................................................ 7

*Jacome v. Optical 49, Inc.*,
    2021 WL 3375134 (E.D.N.Y. July 9, 2021)......................................................... 19, 20

*Mateer v. Peloton Interactive, Inc.*,
    2022 WL 2751871 (S.D.N.Y. July 14, 2022) ............................................................. 13

*Ntalianas v. B & A Contracting of Landmark, Inc.*,
    2018 WL 1701960 (E.D.N.Y. Feb. 26, 2018) .............................................................. 6

*Ntalianas v. B & A Contracting of Landmark, Inc.*,
    2019 WL 3716510 (E.D.N.Y. Feb. 27, 2019) ......................................................6, 15, 17, 18

*Neor v. Acacia Network, Inc.*,
    2023 WL 1797267 (S.D.N.Y. Feb. 7, 2023) .............................................................. 14

*Palaghita v. Alkor Cap. Corp.*,
    2021 WL 4464121 (E.D.N.Y. Aug. 20, 2021) ........................................................... 16

*People v. Grass*,
    257 A.D. 1 (1st Dep't 1939) ....................................................................................... 11

*Pub. Citizen v. U.S. Dep't of Just.*,
   491 U.S. 440 (1989) ................................................................... 13

*Rana v. Islam*,
   210 F. Supp. 3d 508 (S.D.N.Y. 2016) ................................... 11, 12

*Reyes-Fana v. Moca Grocery NY Corp.*,
   2022 WL 5428688 (E.D.N.Y. Aug. 16, 2022) ........................... 17

*Rodriguez v. Almighty Cleaning, Inc.*,
   784 F. Supp. 2d 114 (E.D.N.Y. 2011) .................................. 15, 16

*Rogers v. City of Troy, N.Y.*,
   148 F.3d 52 (2d Cir. 1998) .......................................................... 9

*Rosenbaum v. Meir*,
   2023 WL 2305960 (E.D.N.Y. Mar. 1, 2023) ............................ 10

*Sanchez v. Ms. Wine Shop Inc.*,
   2022 WL 17368867 (E.D.N.Y. Nov. 30, 2022) ........................ 13

*Sarit v. Westside Tomato, Inc.*,
   2020 WL 1891983 (S.D.N.Y. Apr. 16, 2020) ........................... 11

*Tacuri v. Nithin Constr. Co.*,
   2015 WL 790060 (E.D.N.Y. Feb. 24, 2015) ............................. 19

*Trasunion LLC v. Ramirez*,
   141 S.C.t 2190 (2021) ............................................................... 13

*United States v. Klinghoffer Bros. Realty Corp.*,
   285 F.2d 487 (2d Cir. 1960) ..................................................... 11

*Velez v. Sanchez*,
   693 F.3d 308 (2d Cir 2012) ...................................................... 7, 8

*Zuniga v. Newmark Wood Working Grp. Inc.*,
   2022 WL 3446331 (E.D.N.Y. Aug. 17, 2022) .......................... 13

**STATUTES**

28 U.S.C. § 1961(a) ...................................................................... 19

29 U.S.C. § 206(b) ....................................................................... 10

29 U.S.C. § 206(f) ........................................................................ 10

29 U.S.C. § 207(b)(21) ........................................................................................... 10

N.Y. Lab. Law. § 195(3) ................................................................................... 12, 18

N.Y. Lab. Law § 170 ............................................................................................... 11

N.Y. Lab. Law § 191(1)(a) ....................................................................................... 9

N.Y. Lab. Law §§ 198(3), 663(3) ........................................................................... 16

N.Y. Lab. Law §§ 198(4) ........................................................................................ 20

**RULES**

C.P.L.R. § 5001 ...................................................................................................... 19

C.P.L.R. § 5004 ...................................................................................................... 19

**REGULATIONS**

12 N.Y.C.R.R. § 142-2.2 ........................................................................................ 11

12 N.Y.C.R.R. § 142–2.1(a)(2) ............................................................................... 12

29 C.F.R. § 552.99 ................................................................................................... 7

## INTRODUCTION

Plaintiffs Cesar Vargas ("Cesar") and Gloria Vargas ("Gloria") were emplyed as domestic workers for Defendant Gabrielle Langer, who is more commonly known as the Baronness G. von Langendorf (the "Baronness" or "Defendant"), for over 20 years.  Despite caring for Defendant's 6,300-square-foot, 33-acre Long Island home, practically around the clock, Defendant did not pay Plaintiffs a minimum wage, did not pay them overtime, and did not provide them with proper paystubs, all in violation of the New York Labor Law, Articles 6 & 19 ("NYLL").  Rather, Defendant paid them a monthly salary, which was often late, and violated the prompt-payment requirements the NYLL and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*.

Plaintiffs filed suit on December 2, 2022, to remedy these violations of their wage-and-hour rights and served Defendant at her Manhattan residence.  Defendant, however, has defaulted. Having obtained the Certificate of Default from the Clerk of Court, Plaintiffs now move for a default judgment, seeking the following relief: (1) backpay for minimum wage and overtime violations; (2) liquidated damages equal to the backpay award; (3) liquidated damages for the failure to pay on time; (4) $10,000 in wage-statement damages; and (5) pre-judgment interest. Plaintiffs also ask that the Court order Defendant to pay post-judgment interest and, if applicable, the automatic increase provided for by the NYLL for late-paid judgments.

## FACTS

### I.    Plaintiffs were Employed by the Baroness as Domestic Workers.

Cesar and Gloria worked as domestic workers for Defendant at her property located at 32 Watch Way, Huntington, New York 11743 (the "Residence").  DE 1 (Compl.) ¶ 1; Ex. F (Ltr. of Rec.); *see also* Ex. E (Photos) at 1-2 (aerial photos of the property, including the beach and main house).  Cesar maintained Defendant's 33-acre property and two residential structures, whereas Gloria cooked, cleaned, did laundry, and maintained the inside of the 6,300-sqaure-foot home.  *Id*.

### A. Cesar worked as a caretaker of Defendant's estate.

Cesar was employed as a caretaker of Defendant's home. DE 1 (Compl.) ¶ 17. In this capacity, Cesar did maintenance work on the house and on the grounds, he mowed the lawn, raked and picked up leaves, shoveled and moved snow, cleaned the indoor pool, made minor repairs (e.g., painting, patching the asphalt driveway, patching the roof, repairing leaks, repairing the wooden bulkhead), trimmed the hedges, picked up branches, raked the gravel, and performed security checks. *Id.* ¶¶ 17, 40, 42; Ex. E (Photos) at 2-5, 22-25 (photos of the grounds, outside of the main house, and the beach house). Cesar had to respond to Defendant's requests when she or her houseguests were there. *Id.* ¶ 38. That is, he had to tend to the fireplace, assist guests with luggage, open the large windows, prepare the beds, adjust the thermostat, and check in on the guests to make sure they were comfortable. *Id.*; *see* Ex. A (Cesar Decl.) ¶¶ 1-20; Ex. E (Photos) at 5-6, 9-12 (photos of windows). To this end, Cesar's work was akin to that of a butler. *Id.*

Cesar used a variety of tools and other goods to do his job. Ex. A (Cesar Decl.) ¶¶ 12-13. For example, Cesar used a Craftsman lawnmower, which he purchased parts for from Sears – both online and at the brick-and-mortal store. *Id.* Nearly all of Cesar's time was spent performing physical labor. DE 1 (Compl.) ¶ 19. Cesar did not have any administrative duties aside from communicating with Defendant and making certain purchases. *See* Ex. A (Cesar Decl.) ¶¶ 9-25.

### B. Gloria was responsible for cooking and cleaning Defendant's home.

Gloria was responsible for keeping Defendant's 6,300-square-foot home clean. DE 1 (Compl.) ¶ 50. To that end, Gloria did laundry, ironed clothes and bedsheets, made the beds, and swept, mopped, vacuumed, dusted, and scrubbed every room in the house. *Id.* ¶ 51; Ex. B (Gloria Decl.) ¶ 11. This was not an easy task, as Defendant's beds were large and covered with high-quality sheets that had to be ironed by hand. Ex. B (Gloria Decl.) ¶ 12; Ex. E (Photos) at 16-18. Moreover, much of the house was carpeted or covered with Persian rugs (or both). *Id.*; Ex. E

(Photos) at 7, 10-18.  The house also had many large windows, mirrors, and pieces of furniture that required regular cleaning.  *Id*.; Ex. E (Photos) at 8-11, 14-20.

Gloria also cooked for Defendant.  DE 1 (Compl.) ¶¶ 52-53; Ex. B (Gloria Decl.) ¶¶ 11, 13-17, 20-24, 37-38.  To that end, she shopped for groceries at the store, cooked, and served food and beverages to Defendant and her guests.  *Id*.

Nearly all of Gloria's time was spent performing physical labor.  DE 1 (Compl.) ¶ 19; Ex. B (Gloria Decl.) ¶ 9.  Gloria did not have any administrative duties, aside from speaking with Defendant on the phone to set her weekend menu, ordering items on Amazon, recipe research, and putting together a shopping list.  Ex. B (Gloria Decl.) ¶ 9.

## II.    Plaintiffs Worked Long Hours.

### A.  Cesar

As a baseline, on any given week, Cesar spent 30 to 35 hours, performing his usual duties.  DE 1 (Compl) ¶ 32; Ex. A (Cesar Decl.) ¶ 28.  Additionally, Cesar was on call at all other times.  *Id*. ¶ 33; Ex. A (Cesar Decl.) ¶¶ 28-29.  That is, Cesar had to take and respond to Defendant's instructions by phone, intercom, or in person, at any time of day.  *Id*. ¶ 34; Ex. A (Cesar Decl.) ¶¶ 18, 21.  Further, Cesar hosted Defendant's guests, associates, and others.  *Id*. ¶ 35; Ex. A (Cesar Decl.) ¶ 21.  For example, when Defendant was selling the Residence, Cesar regularly escorted the real estate agent and potential buyers around the house and the grounds.  *Id*. ¶ 36; Ex. A (Cesar Decl.) ¶¶ 16, 38.  Cesar also accepted deliveries and supervised contractors.  *Id*. ¶ 37.

Cesar had additional duties based on the season.  *Id*. ¶ 39; *see also* Ex. A (Cesar Decl.) ¶¶ 24-27.  For example, when it snowed, Cesar spent about four to five hours shoveling around the house and using the snow mover to clear the long driveway each time he went outside.  *Id*. ¶ 40.  During heavy snow falls, he did this two, three, or four times over the course of a snowy day.  *Id*.  In the fall, Cesar cleared leaves from the six-acre lawn.  *Id*. ¶ 41.   As   a   result,   he   started

working between 7:00 am and 8:00 am on Tuesdays and Fridays as well. *Id*. After storms, Cesar started earlier and work later to clear branches and clean up the property. *Id*. ¶ 42.

In the evenings, particularly on the weekends, Cesar responded to Defendant's requests when she or her houseguests were there. *Id*. ¶ 38. Cesar tended to the fireplace, assisted guests with luggage, opened the large windows, prepared the beds, adjusted the thermostat, and checked in on the guests to make sure they were comfortable. *Id*. 19. Moreover, Cesar got the paper and brought it to the Baroness or her guests, helped Gloria with serving breakfast, escorted the guests to the beach house or otherwise escorted them around the Residence, lit candles for the pool, prepared wine for the tables, and adjusted the pool temperature. Ex. A (Cesar Decl.) ¶ 20. He also handled whatever other issues the Baroness, or her guests were having with the house. For instance, he was called to fix toilets and replace light bulbs. *Id*. ¶ 21. Lastly, Cesar helped Gloria serve the Baroness and her guests, clean up after them, and clean the kitchen. *Id*. ¶ 22.

In all, before the Baroness decided to sell her home, in weeks in which the Baroness was at the Residence, Cesar performed about 66 hours of active work. *See* Ex. A (Cesar Decl.) ¶ 37; Ex. H (Cesar Scheds.). When she wasn't there, he performed about 40 hours of active work. *Id*. Then, starting in the summer of 2020, he started working another 7.5 hours a week, totaling 73.5 hours when she was there and 47.5 when she wasn't. *Id*. ¶ 38; Ex. H (Cesar Scheds.).

**B. Gloria**

Monday through Thursday, Gloria worked from 9:00 am through 6:00 pm cleaning and organizing the home. DE 1 (Compl.) ¶¶ 67-68; Ex. B (Gloria Decl.) ¶ 27; Ex. I (Gloria Scheds.).

On Friday and through Saturday afternoon, Gloria shopped and cooked for Defendant and her guests. *Id*. ¶ 69; Ex. B (Gloria Decl.) ¶¶ 13, 37. When Defendant was in the home, mostly on Saturdays and Sundays, Gloria cooked for Defendant and her guests and cleaned up after them. *Id*. ¶ 70; Ex. B (Gloria Decl.) ¶¶ 20, 23. On Saturdays, after dinner, Gloria worked past midnight

preparing fruit, snacks, and beverages for Defendant and her guests.  *Id*. ¶ 71; Ex. B (Gloria Decl.) ¶¶ 23, 38, 40.  She then had to clean the kitchen.  *Id*.; Ex. B (Gloria Decl.) ¶¶ 38, 40.

As a result, on average, from April 2016 through her termination, Gloria regularly worked about 71.5 hours a week when the Baroness was at the Residence, and 40 hours a week when the Baroness was not at the Residence.  *See* Ex. B (Gloria Decl.) ¶ 41; Ex. I (Gloria Scheds.).

### III.    Defendant's Payroll Practices.

Plaintiffs were paid in check, without a corresponding document detailing the particulars of the payment.  DE 1 (Compl.) ¶¶ 45-46, 74-75.  Defendant either mailed or hand delivered Plaintiffs their checks.  Ex A (Cesar Decl.) ¶ 47; Ex. B (Gloria Decl.) ¶ 50.  Although Defendant dated the checks as the last day of the month Plaintiffs were being paid for, Plaintiffs received their checks eight or more days after the end of the preceding month about 75% of the time.  Ex. A (Cesar Decl.) ¶¶ 49-50; B (Gloria Decl.) ¶¶ 52-53.

Defendant did not provide Plaintiffs with paystubs listing their hours, basis of wages, deductions, and credits against the minimum wage.  Ex. A (Cesar Decl.) ¶ 51; B (Gloria Decl.) ¶ 54; Ex. D (Checks); DE 1 (Compl.) ¶¶ 45-46, 74-76.  This hampered Plaintiffs' ability to negotiate for better wages and make informed decisions about whether to continue working for Defendant. Ex. A (Cesar Decl.) ¶¶ 52-62; Ex. B (Gloria Decl.) ¶¶ 54-67.

## <u>ARGUMENT</u>

### I.    Defendant Failed to Answer the Complaint, Despite Being Served and Given the Opportunity to Cure.

The Complaint was filed on December 2, 2022.  *See generally* DE 1 (Compl.).  Defendant was served at her place of residence by virtue of service on an individual of suitable age and discretion, accompanied by a mailing.  *See* DE 6 (Affs. of Service).  Because Defendant did not

answer the Complaint or otherwise appear in this action, the Clerk entered a notice of default as per Rule 55(a) of the Federal Rules of Civil Procedure.  *See* DE 8 (Cert. of Default).

Plaintiffs mailed the notice of default and Complaint to Defendant on February 1, 2023, inviting her to cure the default.  *See* Kessler Decl. ¶ 3.  Still, Defendant has neither appeared in this action nor contacted Plaintiffs' counsel.  *See* Kessler Decl. ¶ 4.  Further, Defendant is not in active military service.  *See* Kessler Decl. ¶¶ 5-7; Ex. J (SCRA Reports).

Plaintiffs are serving this motion, pursuant to Local Civil Rule 55.2(c), simultaneous to filing this motion for a default judgment at her last known address.  *See* Kessler Decl. ¶¶ 8-11.

## II.    The Court Should Grant Default Judgment on All Five Causes of Action.

Defendant's default establishes an admission of all well-pleaded allegations.  *Ntalianis v. B & A Contracting of Landmark, Inc.* ("*Ntalianis II*"), No. 16 Civ. 5934, 2019 WL 3716510, at *1 (E.D.N.Y. Feb. 27, 2019) (Brown, Mag.), *adopted*, 2019 WL 3714828 (E.D.N.Y. Mar. 22, 2019). The Court must determine the defendant's liability, as a matter of law, based on these allegations. *Id*.  Considering this standard, this brief shows that Plaintiffs: (A) were covered employees working for a covered employer under the FLSA and NYLL; (B) Defendant violated the NYLL and FLSA by paying them late; (C) Defendant didn't pay overtime; (D) Defendant didn't pay the minimum wage; and (E) Defendant is liable for wage statement violations, which Plaintiffs have Article III standing to bring.

### A.    All of the preliminary FLSA and NYLL elements were pleaded in the Complaint.

### 1.    Plaintiffs satisfied the FLSA's jurisdictional prerequisite.

The FLSA only applies to employee-employer relationships that meet the requirements for "enterprise coverage" or "individual coverage."  *Ntalianas v. B & A Contracting of Landmark, Inc.* ("*Ntalianas I*"), No. 16 Civ. 5934, 2018 WL 1701960, at *3 (E.D.N.Y. Feb. 26, 2018) (Brown, Mag.), *adopted*, 2018 WL 1582294 (E.D.N.Y. Mar. 31, 2018).  Individual coverage applies to

when the plaintiff's work for the employer involves the movement of persons or things between states.  *Iqbal v. Multani*, No. 12 Civ. 3067, 2013 WL 5329286, at *5 (E.D.N.Y. Sept. 20, 2013) (Brown, Mag.) (adopted by Hurley, J.).  Since 1974, the FLSA's minimum wage protections have extended to domestic workers.  *Velez v. Sanchez*, 693 F.3d 308, 326 (2d Cir 2012).  In doing so, "Congress specifically found the employment of persons in domestic service in households affects commerce."  *Cardenas v. Aragon Towers Condo. Ass'n Inc.*, 451 F. App'x 898, 900 (11th Cir. 2012) (per curiam) (citing 29 C.F.R. § 552.99).  The connection to interstate commerce may come through a showing that domestic workers "handle goods such as soaps, mops, detergents, and vacuum cleaners that have moved in or were produced for interstate commerce and also that [these workers] free members of the household to themselves to engage in activities in interstate commerce."  29 C.F.R. § 552.99

Here, Plaintiffs' work required them to use a wide range of cleaners, goods, foods, and tools that were moved in or produced through interstate commerce.  *See* Facts § I(A)-(B).  Moreover, they purchased these products and food items from local stores that moved those items through interstate commerce, and online.  *Id*.  As a result, individual coverage is satisfied.

### 2.  Plaintiffs were Defendant's employees.

The FLSA and NYLL only apply to employees employed by employers.  *See Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 922 (S.D.N.Y. 2013) (noting that the FLSA and NYLL have similar, albeit circular, definitions).  Whether the relationship between a plaintiff and a defendant is one of employee-employer depends on the economic realities of their relationship.  *Velez*, 693 F.3d at 326.  The Second Circuit has set out a non-exclusive set of criteria for making this determination in the domestic worker context under the FLSA:

> (1) the employer's ability to hire and fire the employee; (2) the method of recruiting or soliciting the employee; (3) the employer's ability to control the terms of employment, such as hours and

> duration; (4) the presence of employment records; (5) the expectations or promises of compensation; (6) the flow of benefits from the relationship; and (7) the history and nature of the parties' relationship aside from the domestic labor.

*Velez*, 693 F.3d at 330.

Here, these factors weigh in favor of finding that Plaintiffs were employees under the FLSA. As to the first two factors, Defendant personally hired and fired Plaintiffs. *See* Ex. A (Cesar Decl.) ¶¶ 3, 7; Ex. B (Gloria Decl.) ¶¶ 3, 7; Ex. F (Ltr. of Rec.); Ex. G (Term. Ltr.). As to the third, though Plaintiffs were away from Defendant's watchful eye for much of the workweek, Defendant set the conditions of their employment, required them to remain on-call, and told them what to do and when. *See* DE 1 (Compl.) ¶ 34; Ex. A (Cesar Decl.) ¶¶ 17-21, 29, 30, 39, 42, 44; Ex. B (Gloria Decl.) ¶¶ 10, 28, 42-43, 45. As to the fourth factor, though Defendant did not record Plaintiff's hours, she issued W2s, a letter of recommendation, and a termination letter. *See* Ex. A (Cesar Decl.) ¶ 8; Ex. B (Gloria Decl.) ¶ 8; Ex. C (W2s); Ex. F (Ltr. of Rec.); Ex. G (Term. Ltr.). Further, Defendant paid Plaintiffs a regular salary. *See* DE 1 (Compl.) ¶¶ 30, 65; Ex. A (Cesar Decl.) ¶¶ 45-50; Ex. B (Gloria Decl.) ¶¶ 48-53; Ex. D (Checks). In support of the sixth and seventh factors, Plaintiffs aver that they performed their duties for compensation – not for educational, personal, or familial reasons. Ex. A (Cesar Decl.) ¶¶ 4-6; Ex. B (Gloria Decl.) ¶¶ 4-6; *see also Velez*, 693 F.3d at 330 (noting that children provide chores as members of the household and students at boarding schools do chores as students – not as employees).

## B. First and Second Causes of Action: Defendant paid Plaintiffs late in violation of the FLSA and NYLL.

Because Defendant paid Plaintiffs at the end of the month – or later, instead of within seven days after the end of each workweek, Defendant is liable for the failure to pay timely wages under the NYLL and FLSA.

## 1. Defendant's monthly wage payments violated Section 191 of the NYLL.

The NYLL requires employers to pay manual workers no more than seven days after the workweek ends. N.Y. Lab. Law § 191(1)(a). "[E]mployees must *receive* their paycheck" in this timeframe. Ex. K (FAQ) at 4-5 (emphasis in original). "[E]mployers must allow sufficient time for the mail to be delivered to the employee to avoid violations of Section 191." *Id.*

Manual workers are employees that perform physical labor. *Beh v. Cmty. Care Companions Inc.*, No. 19 Civ. 1417, 2021 WL 3914297, at *3 (W.D.N.Y. Feb. 1, 2021) ("[C]arpentry workers, cooks, wait staff, grocery store employees, janitorial staff, hotel maids, airport chauffeurs, and pizzeria workers have been found to be 'manual workers.'" (collecting authorities), *adopted*, 2021 WL 3914320 (W.D.N.Y. June 23, 2021). An employee qualifies as a manual worker if more than 25% of their workday is devoted to physical labor. *See* N.Y. Dep't of Lab., Op. Ltr, No. RO-08-0061 (December 4, 2008). Physical labor includes a wide array of physical activities. N.Y. Dep't of Lab. Op. Ltr., No. RO-09-0066 (May 21, 2009).

Here, Plaintiffs were manual workers. DE 1 (Compl.) ¶¶ 18-20, 24, 51-54, 58-59. Their duties were primarily physical in nature. *See supra* Facts § I(A)-(B).

As a result, Defendant was obligated to pay them within seven days after the workweek ended. N.Y. Lab. Law § 191(1)(a). Yet, Defendant paid them monthly. DE (Compl.) ¶¶ 26-29, 60-64); *supra* Facts § III. Defendant, therefore, violated Section 191 of the NYLL. *See Domi v. 2301 Kings LLC*, No. 21 Civ. 4205, 2021 WL 5013659, at *1-2 (E.D.N.Y. Oct. 28, 2021) (liability established where the defendant "only paid plaintiff monthly").

## 2. Defendant's failure to pay Plaintiffs on time, whether pursuant to the NYLL's mandate or Defendant's own payment schedule, violated the FLSA.

FLSA imposes a prompt payment requirement. *Rogers v. City of Troy, N.Y.,* 148 F.3d 52, 55 (2d Cir. 1998); *Brito v. Marina's Bakery Corp.*, No. 19 Civ. 828, 2022 WL 875099, at *11

(E.D.N.Y. Mar. 24, 2022).  This obligation flows from Section 206(a) of the FLSA.  *Belizaire v. RAV Investigative & Sec. Servs. Ltd.*, 61 F. Supp. 3d 336, 353 (S.D.N.Y. 2014) (collecting Second Circuit cases).  Although live-in domestic workers are not entitled to overtime wages, they are entitled to the minimum wage pursuant to Sections 206(a)-(b) of the FLSA.  *Compare* 29 U.S.C. § 207(b)(21) (exclusion from overtime), *with* 29 U.S.C. § 206(f) (providing that domestic workers employed for more than eight hours must be paid in accordance with Section 206(b)).[1]

When considering whether a payment of wages was not sufficiently prompt, Courts consider what caused the delayed payment and whether the delays were reasonable.  *Adams v. City of New York*, No. 16 Civ. 3445, 2021 WL 1791182, at *8-9 (S.D.N.Y. May 5, 2021) (collecting cases).  Courts apply an objective analysis.  *Rosenbaum v. Meir*, No. 20 Civ. 4520, 2023 WL 2305960, at *5 (E.D.N.Y. Mar. 1, 2023).  Delays have been found to be unreasonable when they resulted from the employer's own incompetence or unwillingness to make timely payments, despite the ability to do so.  *See, e.g.*, *Belizaire*, 61 F. Supp. 3d at 359 ("[A] delay of more than two weeks between the end of a weekly pay period and the issuance of a paycheck is unreasonable[.]"); *Franco v. City of Victorville*, No. 07 Civ. 7670, 2009 WL 10668439, at *5 (C.D. Cal. Sept. 23, 2009) ("[City's] computer programming error is objectively unreasonable."); *Dominici v. Bd. of Educ. of City of Chicago*, 881 F. Supp. 315, 320 (N.D. Ill. 1995) ("An employer may not set up an inefficient accounting procedure and then claim it is not responsible for timely payment of wages due to its own incompetence.").

NYLL § 191 is "a corollary" to the FLSA's prompt-payment mandate.  *Gorski v. State*, 23 Misc. 3d 327, 874 N.Y.S.2d 347, 352 (Ct. Cl. 2008).  As such, the two have been "analyzed

---

[1]    Section 206(b) extends the protections of the Section 206(a) to individuals who were covered by certain amendments to the FLSA. 29 U.S.C. § 206(b).  This includes domestic workers. *See* 29 U.S.C. § 206(f)

together." *Sarit v. Westside Tomato, Inc.*, No. 18 Civ. 11524, 2020 WL 1891983, at *4 (S.D.N.Y. Apr. 16, 2020) (collecting cases).

Here, Defendant's monthly salaries violated the FLSA. Because the NYLL sets the required pay date for manual laborers, it is unreasonable to pay such workers beyond that date.

Moreover, in about 75% of the months at issue, Defendant paid Plaintiffs no less than a week after the end of the acquiesced-to pay date – the end of the month. DE 1 (Compl.) ¶ 29, 60; Ex. A (Cesar Decl.) ¶ 50; Ex. B (Gloria Decl.) ¶ 53. These delayed payments establish liability under the FLSA, regardless of whether the NYLL established a tighter payment schedule. *Brito*, 2022 WL 875099, at *11, *20 (finding FLSA and NYLL violations, and awarding damages, where the defendants "failed to comply with their own pay schedules").

Lastly, Plaintiffs' assent to the payment schedule is irrelevant because parties cannot waive the FLSA's and NYLL's prompt-payment requirements. *See, e.g.*, *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 491 (2d Cir. 1960) (FLSA); *People v. Grass*, 257 A.D. 1, 3 (1st Dep't 1939) ("Contracts in contravention of this provision of the Labor Law are illegal and void.").

### C.  Third Cause of Action:  Defendant did not pay overtime wages to Plaintiffs.

Domestic workers residing in their place of employment are entitled to overtime pay equal to one and one-half time their regular rate of pay for all hours after 44 per week. N.Y. Lab. Law § 170; 12 N.Y.C.R.R. § 142-2.2; *see also Rana v. Islam*, 210 F. Supp. 3d 508, 514 (S.D.N.Y. 2016), *vacated in part*, 887 F.3d 118 (2d Cir. 2018) (vacating the award of stacked liquidated damages). In this context, "domestic worker" includes individuals employed in a residence for purposes of "housekeeping" and other "domestic service purpose." *Id*. §2(16).

Here, Plaintiffs were domestic workers as contemplated by the NYLL. *See* DE 1 (Compl.) ¶¶ 1, 16, 23. As such, they were entitled to overtime after 44 hours of work per week. Plaintiffs

regularly worked over 44 hours per week, but never received any overtime pay.  *See supra* Facts § II.  As a result, Defendant is liable for Plaintiffs' unpaid overtime wages.

**D.  Fourth Cause of Action:  Defendant failed to pay at or above the minimum wage.**

Domestic workers are entitled to the minimum wages set forth in the Miscellaneous Industry Wage Order.  *See Rana*, 210 F. Supp. 3d at 514 (citing 12 N.Y.C.R.R. § 142–2.1(a)(2)).  Accordingly, Plaintiffs were entitled to no less than the following rates per hour worked:

- $9.00, as of December 31, 2015;
- $10.00, as of December 31, 2016;
- $11.00, as of December 31, 2017;
- $12.00, as of December 31, 2018;
- $13.00, as of December 31, 2019; and
- $14.00, as of December 31, 2020.

*See* 12 N.Y.C.R.R. § 142-2.1(a)(2); History of the Min. Wage of N.Y. State, https://dol.ny.gov/history-minimum-wage-new-york-state (last accessed Feb. 15, 2023).

Here, however, Plaintiffs' hourly rates regularly fell below the minimum wage.  *See* DE 1 (Compl.) ¶¶ 30-44, 65-73, 113-114; Ex. N (MW & OT).  Cesar's hourly rate fell below the minimum wage whenever the Baroness was at the Residence and throughout 2021.  *Id*.  Gloria's hourly rate, on the other hand, was always under the minimum wages – as it never exceeded $8.86. *Id*.

**E.  Fifth Cause of Action:  Defendant failed to provide wage statements.**

Employers must provide wage statements to employees with every wage payment that list, among other things, the following:  the period of time worked, number of the employer, rate and basis of pay, deductions taken, allowances, if any, claimed against the minimum wage, and the number of hours worked.  N.Y. Lab. Law. § 195(3).

Plaintiff suffering from an informational injury have Article III standing if they also suffered "adverse effects from the denial of access to information."  *Grae v. Corr. Corp. of Am.*, 57 F.4th 567, 570–71 (6th Cir. 2023) (citing Second, Third, Fifth, Ninth, and Tenth Circuits,

including *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 444 (2d Cir. 2022)).  Any alleged "downstream consequences" must involve an "interest in using the information beyond brining [the] lawsuit." *Harty*, 28 F.4th at 444 (cleaned up).  The inability to correct erroneous information about the plaintiff before it is disclosed to others, may, for example, constitute a downstream consequence. *See Sanchez v. Ms. Wine Shop Inc.*, No. 22 Civ. 2178, 2022 WL 17368867, at *9 n. 5 (E.D.N.Y. Nov. 30, 2022) (quoting *Trasunion LLC v. Ramirez*, 141 S.C.t 2190 (2021)).  Informational-injury cases recognized by the Supreme Court include *FEC v. Akins*, 524 U.S. 11, (1998) and *Pub. Citizen v. U.S. Dep't of Just.*, 491 U.S. 440 (1989).  *See Grae*, 57 F.4th at 570–71 (discussing same and noting that *TransUnion* did not overrule them).  In *Akins*, voters did not receive statutorily required information about the candidates. 524 U.S. at 21.  The downstream consequence was that their ability to more effectively evaluate the candidates was hindered.  *Id*.  In *Public Citizen*, bar-association plaintiffs were not given FOIA information that they averred would have enabled them to "more effectively" participate in the judicial selection process. 491 U.S. at 449.

In the context of wage statement claims, the district courts are divided on what constitutes a sufficient injury-in-fact on a wage-statement claim.  *Zuniga v. Newmark Wood Working Grp. Inc*., No. 20 Civ. 2464, 2022 WL 3446331, at *8 (E.D.N.Y. Aug. 17, 2022) (collecting cases).  The courts agree, however, that a plaintiff will have standing if the failure to provide the information required by Section 195 has identifiable consequences.  *See Sanchez*, 2022 WL 17368867, at *9 n. 5; *Mateer v. Peloton Interactive, Inc.*, No. 22 Civ. 740, 2022 WL 2751871, at *2 (S.D.N.Y. July 14, 2022) (plaintiffs had set forth a sufficient basis of conferring standing on motion to dismiss where they alleged the wage statement claims caused the underpayment). Most recently, Judge

Engelmayer held that the failure to provide an accurate wage statement is a cognizable harm, regardless of whether there was some other downstream consequence:

> Denying an employee such notices—as alleged here—can impinge on an employee's interests not only in being paid what is owed, but also in being able to advocate for the receipt of proper pay. The Court thus finds that, by alleging that they were not furnished the statutorily required notices, plaintiffs have asserted a concrete and particularized injury sufficient to confer standing for their WTPA wage notice and wage statement claims.

*Bueno v. Alla B. Buzinover, M.D.*, No. 22 Civ. 2216, 2023 WL 2387113, at *3 (S.D.N.Y. Mar. 7, 2023) ("[A]lthough the SAC is unspecific as to the downstream injuries that resulted from these alleged statutory violations, such allegations are not necessary to supply standing[.]"); *but see Neor v. Acacia Network, Inc.*, No. 22 Civ. 4814, 2023 WL 1797267, at *4 (S.D.N.Y. Feb. 7, 2023) (employer's reporting of lesser hours than those worked did not plausibly cause a harm because these omissions "would immediately alert" the plaintiffs of a potential underpayment).

Here, Defendant's paychecks did not list Plaintiffs' hours worked, rate or basis of pay, withholders, or credits against the minimum wage. *See* Ex. D (Checks). As a result, Plaintiffs could not compare their numbers against the employer in a way that would alert them to any issues. Rather, they were denied the information needed to determine what they were actually being paid, as opposed to what Defendant claimed she was paying them in their conversations, and their negotiation positions were hampered as a result. *See* Ex. A (Cesar Decl.) ¶¶ 53-61; Ex. B (Gloria Decl.) ¶¶ 54-65. Further, like in *Atkins* and *Public Citizen*, Defendant impeded Plaintiffs' ability to effectively evaluate their workplace situation by failing to provide statutorily required information. *See* Ex. A (Cesar Decl.) ¶ 62; Ex. B (Gloria Decl.) ¶¶ 66-67. As a result, Defendant is liable for these violations and Plaintiffs have standing to seek a judgment on these claims.

### III.    Plaintiffs are Owed $541,462.73 in Damages and Interest as of this Motion.

Well pleaded allegations are accepted as true to determine liability but not to establish damages. *Ntalianis II*, 2019 WL 3716510, at *2.  To do so, movants must prove that the monies sought relate to the injuries pleaded.  *Id.*; *Callejas v. Hitano Servs., Inc.*, No. 15 Civ. 1123, 2016 WL 11440079, at *1 (E.D.N.Y. Aug. 10, 2016) (Brown, Mag.), *adopted*, 2016 WL 11431680 (E.D.N.Y. Sept. 30, 2016).  Damages may be established "at a hearing or upon a review of detailed affidavits and documentary evidence."  *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012).  The determination may be made upon the movant's papers alone "as long as the court has ensured that there was a basis for the damages specified in the default judgment." *Ntalianis II*, 2019 WL 3716510, at *2 (quoting *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989) (cleaned up)).

In the FLSA and NYLL context, the defendant's default deprives the movants of essential employment records and impedes the movant's proffer of damages.  *Culajay v. P.M.F. Steel Corp.*, No. 16 Civ. 6597, 2018 WL 1936457, at *2 (E.D.N.Y. Feb. 21, 2018) (Brown, Mag.), *adopted*, 2018 WL 1796222 (E.D.N.Y. Mar. 20, 2018).  As a result, and considering the burdens placed on employers to maintain accurate wage-and-hour records, "an employee may satisfy this evidentiary burden by relying on the employee's recollection and estimates of hours worked."  *Id.*; *accord. Ntalianis II*, 2019 WL 3716510, at *2 (citing *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 126 (E.D.N.Y. 2011)).

Though Plaintiffs have established FLSA and NYLL liability, they cannot recover damages under both laws for the same injuries.  *Diaz v. Rene French Cleaners, Inc.*, No. 20 Civ. 3848, 2022 WL 4646866, at *6 (E.D.N.Y. Aug. 29, 2022), *adopted*, 2022 WL 4662247 (E.D.N.Y. Sept. 30, 2022).  Because the NYLL generally provides for a greater recovery, Plaintiffs damages' analysis and the Proposed Order only reflects an award of damages under the NYLL.  *See Palaghita v.*

*Alkor Cap. Corp*., No. 19 Civ. 504, 2021 WL 4464121, at *10 (E.D.N.Y. Aug. 20, 2021) (collecting cases), *adopted*, 2021 WL 4463483 (E.D.N.Y. Sept. 29, 2021) ("Here, the NYLL affords the greater recovery. I therefore respectfully recommend that Plaintiffs be awarded damages under the NYLL.").

**A. The statute of limitations under the NYLL extends back to April 2016.**

The NYLL applies a six-year statute of limitations. N.Y. Lab. Law §§ 198(3), 663(3). But, the statute of limitations for claims under New York law was extended an additional 228 days by the Governor's executive orders of 2020. *See Bell v. Saunders*, No. 9:20 Civ. 256, 2022 WL 2064872, at *5 (N.D.N.Y. June 8, 2022). Thus, because Plaintiffs filed the Complaint on December 2, 2022, their claims start on April 18, 2016.

**B. Plaintiffs are owed $127,559.94 in back wages.**

"Unpaid minimum wages due are calculated by subtracting the hourly rate paid to Plaintiffs each week from New York's minimum wage rate." *Rodriguez*, 784 F. Supp. 2d at 126. The delta is then multiplied by the weekly hours worked and each weekly underpayment is "added together to yield the total unpaid minimum wages due." *Id*. "Unpaid overtime wages are calculated by multiplying the New York minimum wage rate . . . by 0.5 to determine the additional amount owed per hour over 40 hours worked." *Id*. This unpaid-overtime rate is "then multiplied by the number of hours of overtime worked per week . . . [and] then aggregated to determine the total amount of overtime damages owed." *Id.*

Here, Plaintiffs are owed $127,559.94 in unpaid minimum and overtime wages. *See* Kessler Decl. ¶ 12; Ex. P (Summary). Counsel took the following steps to calculate these damages:

<u>1st.</u>    Determined the number or weeks in each relevant time period, considering the annual increases to the minimum wage and variations in working hours. *See* Exs. N (MW & OT) (columns A-D), H-I (Schedules).

2nd.   Calculated Plaintiffs' weekly wage rates by dividing each Plaintiff's annual wages by 52 weeks.  *See* Exs. N (MW & OT) (column E), L (191 Chart).

3rd.   Compared Plaintiffs' hourly rates of pay to the applicable minimum wage rates.  *See* Ex. N (MW & OT) (columns F-H)

4th.   Multiplied the delta by the number of weeks (less two weeks per year for vacations in 2016 through 2019) and hours at issue.  *Id*. (column I).

5th.   Multiplied the overtime rate owed by the number of overtime hours and weeks at issue.  *Id*.  (columns J-L).

*See also* Kessler Decl. ¶¶ 12-18.

## C.  Plaintiffs are owed $366,062.57 in liquidated damages.

Absent a showing that the employer's underpayments occurred despite it's good-faith attempts to comply with the wage laws, a plaintiff is entitled to liquidated damages equal to 100% the underpayments.  *Reyes-Fana v. Moca Grocery NY Corp.*, No. 21 Civ. 4493, 2022 WL 5428688, at *12 (E.D.N.Y. Aug. 16, 2022), *adopted*, 2022 WL 4094241 (E.D.N.Y. Sept. 7, 2022). Defendants who fail to answer the complaint and don't oppose the motion for a default judgment, will not meet their burden to establish the good-faith defense to liquidated damages.  *Id*. (collecting cases); *see, e.g.*, *Ntalianis II*, 2019 WL 3716510, at *3 ("Here, defendants have not appeared nor have established good faith to rebut the liquidated damages' presumption.").

In the context of late-payment claims, the measure of liquidated damages is 100% the late-paid wages.  *See, e.g.*, *Brito*, 2022 WL 875099, at *19 ("[E]mployees are entitled to damages equal to the wages that were paid late."); *Guzman v. Carlo's Bakery 42nd & 8th LLC*, No. 655603/2021, 2022 WL 1909581, at *1 (Sup. Ct. June 01, 2022) (awarding 100% liquidated damages on summary judgment); *see also Bemejo v. Shaker Contractors, Corp.*, No. 22 Civ.1427, 2022 WL

17251667, at *5 (S.D.N.Y. Nov. 28, 2022) ("Plaintiffs are entitled to . . . liquidated damages equal to the total amount of all wages that were not paid in accordance with the law[.]").

Here, liquidated damages should be granted in full because Defendant cannot establish a good-faith defense since she defaulted. Moreover, the Complaint demonstrates that Defendant's violations of the law were willful or otherwise committed in the absence of a good-faith belief. DE 1 (Compl.) ¶¶ 82-85, 91-95. As a result, Plaintiffs are entitled to liquidated damages equal to 100% the unpaid minimum wage and overtime damages discussed in the preceding section.

Furthermore, Plaintiffs are entitled to $228,502.63 in liquidated damages for their late-paid wages. *See* Kessler Decl. ¶¶ 19-21; Ex. L (191 Chart). Because the first three workweeks per month were paid late – simply by virtue of paying monthly wages – and the fourth workweek was paid late 75% of the time, we determined that 93.8% of Plaintiffs' wages were paid late (average of 100% for three weeks and 75% for one). *See* Kessler Decl. ¶ 20. Plaintiffs' weekly wages were then multiplied by the number of applicable weeks, the weekly salary, and 93.8%, and reduced by two weeks of salary per year from 2016 to 2019 to account for vacations. *See* Ex. L (191 Chart).

### D. Plaintiffs are entitled to $5,000 each in wage-statement damages.

Wage-statement damages accrue at the rate of "$250 for each workday that the violations occurred or continue to occur, not to exceed $5,000." *Ntalianis II*, 2019 WL 3716510, at *3 (citing N.Y. Lab. Law § 195(3)). As a result, the $5,000 cap will be reached after 20 days. Here, Plaintiffs are entitled to $5,000 each as they worked for Defendant for well over 200 *weeks* during the statutory period. *See* Ex. P (Summary) (column D).

### E. The prejudgment interest is accruing at $31.45 per day.

Pre-judgment interest is calculated at a rate of nine percent per annum on unpaid wages, excluding liquidated damages and wage-statement damages. *Ntalianis II*, 2019 WL 3716510, at *3 n. 2 (citing, *inter alia*, C.P.L.R. §§ 5001, 5004). Interest is calculated from the midpoint of the

plaintiffs' employment.  *Diaz*, 2022 WL 4646866, at *11.  Per diem interest is calculated by

multiplying the total compensatory damages award by the interest rate and then dividing by 365.

*Id*. at *12 n. 12-13.  To date, prejudgment interest equals $47,840.22.  *See* Kessler Decl. ¶ 23; Ex.

O (Interest).  It is continuing to accrue at the rate of $31.45 per day.  *Id*.

### F.  The Court should order Defendant to pay post-judgment interest and an automatic 15% increase in the value of the judgment, before post-judgment interest, pursuant to Sections 198(4) and 663(4) of the NYLL if the judgement goes unpaid after 90 days.

"Plaintiffs are entitled to post-judgment interest on all money awards as a matter of right."

*Tacuri v. Nithin Constr. Co.*, No. 14 Civ. 2908, 2015 WL 790060, at *12 (E.D.N.Y. Feb. 24, 2015)

(awarding post-judgment interest on "all sums awarded, including attorney fees and costs"); *see,*

*e.g.*, *Diaz*, 2022 WL 4646866, at *12 ("The award of post-judgment interest is mandatory on

awards in civil cases as of the date judgment is entered." (cleaned up)).  "Under the statute, interest

is calculated from the date of the entry of judgment, at a rate equal to the weekly average 1-year

constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve

System, for the calendar week preceding [the date of the judgment." *Diaz*, 2022 WL 4646866, at

*12 (citing 28 U.S.C. § 1961(a)).  Thus, Plaintiffs ask that the Court order Defendant to pay "post-

judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action

until the date of payment, at the rate set forth in 28 U.S.C. § 1961." *Jacome v. Optical 49, Inc.*,

No. 20 Civ. 2615, 2021 WL 3375134, at *12 (E.D.N.Y. July 9, 2021), *adopted*, 2021 WL 3373130

(E.D.N.Y. Aug. 3, 2021); *see also* DE 1 (Compl.) at 15 (requesting post-judgment interest).

The NYLL also attempts to compel employers to promptly pay judgements against them

by providing for a one-time increase to overdue judgments.  *See Diaz*, 2022 WL 4646866, at *13.

The automatic-increase provisions of Articles 6 and 19 provide that:

> Any judgment or court order awarding remedies under this section
> shall provide that if any amounts remain unpaid upon the expiration
> of ninety days following issuance of judgment, or ninety days after

> expiration of the time to appeal and no appeal therefrom is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent.

N.Y. Lab. Law §§ 198(4); 663(4). This one-time-enforcement mechanism is distinct from post-judgment interest, as interest will continue to accrue until payment is made. *Diaz*, 2022 WL 4646866, at *13. Thus, this one-time penalty "should not be imposed in lieu of a post-judgment interest award at the federal rate." *Id*. ("[M]any courts in this District have found that the application of both 28 U.S.C. § 1961 and NYLL §§ 198(4) and 663(4) is not mutually exclusive." (collecting cases)). The increase, however, only applies to damages awarded under the NYLL. *See, e.g.*, *Jacome*, 2021 WL 3375134, at *13 (recommending that "Plaintiff be awarded a [15%] increase in the amount of [NYLL] damages owed to him for any amounts unpaid after ninety days following the issuance of judgment or the expiration of the time to appeal.").

Plaintiffs, therefore, request the Court to order that if the judgment remains unpaid after 90 days, or 90 days after expiration of the time to appeal and no appeal is pending, the total amount of the judgment automatically increases by 15%.

## IV.    Plaintiffs' Request for Costs of $506.65 is Reasonable.

Plaintiffs seek $506.65 in costs, consisting of $402 in filing fees, $95 in service costs, and $9.65 in postage. *See* Kessler Decl. ¶ 22; Ex. Q (Invoices).

## <u>CONCLUSION</u>

For the reasons set out above, Plaintiffs respectfully request that the Court grant this motion 1234in full and issue the Propose Order attached as Exhibit R.

Dated: Melville, New York
        March 16, 2023                          Respectfully submitted,

                                                /s/ *Troy L. Kessler*

                                                Troy L. Kessler
                                                Garrett Kaske

**KESSLER MATURA P.C.**
534 Broadhollow Road, Suite 275
Melville, New York 11747
Telephone: (631) 499-9100
Facsimile: (631) 499-9120
tkessler@kesslermatura.com
gkaske@kesslermatura.com

*Attorneys for Plaintiffs*

21